## Jennings v. Commonwealth.

(Decided Nov. 25, 1932.)

194

WAUGH & HOWERTON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Wilson R. Jennings, hereinafter referred to as the defendant, has appealed from a judgment sentencing him to twenty years of confinement in the penitentiary for robbing the Paintsville National Bank. This bank was robbed by three men about 2:30 p. m. March 9, 1932.

For reversal the defendant urges that the court abused its discretion in overruling his motion for a change of venue, which he sought on account of alleged local prejudice; but in view of the showing made by the defendant and the showing made by the commonwealth we do not regard the court's ruling as erroneous.

After the court overruled the defendant's motion for a change of venue, the defendant moved the court that a jury be summoned from an adjoining county, which motion the court sustained, and the defendant was tried by a jury selected from a venire brought from Pike county.

The next contention of the defendant is that there was not sufficient evidence to connect him with the crime. Six witnesses identified the defendant as one of these robbers, and to break down this identification the defendant points to a mark on the right side of his face about the size of a silver quarter and described in brief as a red or dark brown mark, also referred to in brief as a birthmark. Not one of these identifying witnesses saw this mark on the occasion of the robbery. The defendant was arrested in Paintsville. He does not live in that city and appears not to have any very definite home, but he has for several years spent his time in Ashland, Ky., and Huntington, W. Va., living in

hotels in those two places. There is no evidence that this mark could not be artificially produced, and the average man going back into a community where he knew he was charged with such a crime as this would endeavor to conceal his identity and would perhaps arrange to have something on his face to look like a birthmark or maybe two birthmarks. There is no evidence that it would be impossible to produce this mark by artificial means. Anyway, all of that is for the jury; they have seen it and we have not.

The evidence for the defendant is that at the time of this robbery he was in a room above the Monarch Restaurant in Huntington, W. Va., in which room such important business as betting on race horses, shooting craps, and playing poker is engaged in.

This place of business, which some of the witnesses refer to as a "joint," was right well equipped, and it was connected with the General News Bureau through which agency it received news of important happenings in Pittsburgh, Cincinnati, and all Ohio river cities, especially sporting news.

There was an operator stationed there to receive this news, and he had a megaphone by which he would announce the news to the men engaged in and at the betting stands, the poker tables, and the crap tables, so that they could keep up with the doings of the world without interruptions to their business. About 4 p. m. on March 9th the announcement was made that the Paintsville National Bank had been robbed, and the defendant shows by some six or seven men that they were there in the room at the time and heard that announcement and the defendant was there and at work conducting a crap table, from which the defendant argues that it was utterly impossible for him to have been one of these robbers.

He also introduces a Mr. Ed. M. Schwartz, who says he was there and he heard this announcement, and he had just before that sold to the defendant some tickets to a prize fight and he had made a notation of this in his book which he produced. The defendant says that he is a professional gambler, and during the mornings he usually plays golf at $2 a hole and during the afternoons and evenings he is at his place of business over the restaurant, and that he is right successful, and thus he accounts for the large sums of money

which the commonwealth showed he had just after this robbery.

If you count the witnesses, then the number by which the defendant established his alibi exceeds the number by which the commonwealth established his connection with the robbery by identifying him, but all of this was a question for the jury submitted to it under instructions of which the defendant does not complain, and we have often written that a verdict will not be disturbed because the jury believed one set of witnesses rather than another.

His last ground for reversal is alleged misconduct of the attorney for the commonwealth in his closing argument to the jury in which he said:

"The jury can reach no other conclusion save that Eddie Schwartz, after he discovered that his friend had been arrested on this charge, went to work and prepared the evidence and wrote his name in the book."

The court did not allow this book to be introduced in evidence, and the defendant argues now that the above remark was prejudicial to him because there was nothing in the evidence from which the commonwealth's attorney could deduce such a statement. It will be noticed that the commonwealth's attorney does not state this as a fact, but in commenting on the evidence and in pointing out to the jury the different conclusions that might be supported by the evidence, he said what he did, not as a statement of facts, but as a suggested conclusion which the evidence before the jury would support, and it was within the range of legitimate argument.

The judgment is affirmed.